## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

WARD CHRYSLER CENTER, INC., RLW    )
MLW, LLC, RONALD WARD and       )
MARK WARD,                           )
                                   )
        Plaintiffs,              )
                                   )
v.                                    ) Case No.:  3:20-cv-01162-GCS
                                   )
BANK OF HERRIN,                )
                                   )
        Defendant.           )

## **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

NOW COMES the Defendant, Bank of Herrin ("Bank"), by and through its attorney, Mark S. Johnson of Johnson, Schneider & Ferrell, L.L.C. and submits the following  Memorandum in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint ("Complaint"):

## **INTRODUCTION**

Plaintiffs initially brought an eight (8) count Complaint against the Bank surrounding the Bank's financing of Plaintiffs' used car inventory at two locations in Metropolis, Illinois and Carbondale, Illinois.  Bank filed a Motion to Dismiss Plaintiffs' initial Complaint and Plaintiffs, with leave of Court, have now filed their First Amended Complaint.

The new First Amended Complaint eliminates one (1) of the Plaintiffs, Ron and Mark Ward, LLC.  In addition, the Plaintiffs have abandoned three (3) of the eight (8) Counts in their initial Complaint.  No longer before this Court are

Plaintiffs' claims for constructive fraud/breach of fiduciary duty; negligence; and breach of implied covenant of good faith and fair dealing.

The five (5) Counts of Plaintiffs' First Amended Complaint nonetheless remain defective in multiple respects and should be dismissed with the exception of one (1) narrow issue raised in Plaintiffs' breach of contract claim set forth in Count III.

## FACTUAL BACKGROUND

Plaintiffs' Ward Chrysler Center, Inc. ("Ward Chrysler") and RLW & MLW, LLC ("Ward Chevy") are owned by Mark Ward and Ronald Ward.

Ward Chrysler operates a dealership in Carbondale, Illinois and Ward Chevy operates a dealership in Metropolis, Illinois.  The Bank financed the used car inventory for both Ward Chrysler and Ward Chevy at their two separate locations under two separate Business Loan Agreements.  Mark Ward and Ronald Ward individually guaranteed the loans for both Ward Chrysler and Ward Chevy.

Plaintiffs allege that Bank was part of a fraudulent scheme initiated by the Plaintiffs' former employees that involved the double-booking of vehicles on the two separate Business Loan Agreements.  Basically, the Plaintiffs allege that its general manager, Brian Yates ("Yates"), officer manager, Amanda Boyd ("Boyd") and officer worker, Elizabeth Monroe ("Monroe") are the authors of this fraudulent scheme to defraud the Plaintiffs.

The Plaintiffs seek to hold the Bank responsible on multiple theories of recovery that are all predicated upon the common theme that the Bank is accountable for the malfeasance of the Plaintiffs rogue employees.

## STANDARD FOR MOTION TO DISMISS

A motion to dismiss brought pursuant to Rule 26(b)(6) tests the sufficiency of the complaint.  To survive a Rule 12(b)(6) motion, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations of the complaint are true." *Bell Atlantic Corp., v. Twombley,* 550 US 544, 545 (2007).  The court is "not bound to accept as true a legal conclusion couched in a factual allegation." *Ashcroft vs. Iqbal,* 556 US 662 (2009).  Moreover, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*  Thus, "a court considering a motion to dismiss can choose to begin with identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint they must be supported by factual allegations.  Plaintiffs' complaint must…contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.*

## ARGUMENT

**A.      Four (4) of the five (5) Counts of Plaintiffs' First Amended Complaint must be dismissed because they fail to state a claim upon which relief may be granted.**

The Plaintiffs have now had the opportunity to correct the technical pleading deficiencies raised by the Bank in its Motion to Dismiss the Plaintiffs' initial Complaint. Plaintiffs' claims must now therefore rise or fall on the allegations found within the First Amended Complaint. For the reasons that follow, it is clear from the facts alleged in Plaintiffs' First Amended Complaint that the Plaintiffs cannot, as a matter of law, bring four (4) of the five (5) Counts of Plaintiffs' First Amended Complaint.

Bank will address each of the five (5) Counts of Plaintiffs' Complaint in turn because, while four (4) of the five (5) Counts are subject to dismissal with prejudice, the remaining Count remains defective in that portions of that remaining Count should likewise be dismissed.

(1) **Count I – RICO.** To state a civil claim under RICO (Racketeering Influencing Corrupt Organizations Act, 18 USC Section 1962 *et seq.*) the Plaintiffs must plead the following elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Sedima, S.B.R.L., v. Imrex Co.,* 472 US 479, 496 (1985). Plaintiffs have not pled, nor could they ever plead, facts to satisfy any of the four elements of a civil RICO action.

(a) **Conduct.** A remarkably similar case to the case at bar is *International Outdoor, Inc., v. RBS Citizens Bank*, 210 WL 11541842 (E.D. Mich. 2010). Like this case, the plaintiff in *International Outdoor* sought to recover from the defendant bank for the malfeasance (embezzlement) committed by the plaintiff's own employees. Both the plaintiff in *International Outdoor* and the

Plaintiffs in this case allege that the Defendant bank engaged in "conduct" that amounted to a criminal enterprise.  The court in *International Outdoor* dismissed the plaintiffs' complaint and found that the plaintiff failed to allege that the defendant bank engaged in "conduct" that resulted in the defendant bank receiving some portion of the "embezzled proceeds."  Here, the Plaintiffs have not alleged that the Bank ever actively engaged in the fraud (double booking) perpetrated on the Plaintiffs by its former employees.  In fact, there is absolutely no allegation that the Bank or its representatives knew that Plaintiffs' employees were the architect of the fraudulent scheme or that the Bank shared in the proceeds of the alleged fraud.

Moreover, the court in *International Outdoor* found that the transactional fees paid to the defendant bank, which were the fruit of the embezzlement, did not rise to the defendant bank's participation in the fraudulent scheme.  Similarly, the Plaintiffs' allegation here that the Bank earned interest on loans that were double-booked does not establish the foundation for a claim that the Bank somehow engaged in "conduct" that permitted the Bank to benefit from the illegal activity of the Plaintiffs' former employees.  (See paragraph 33 of Plaintiffs' First Amended Complaint.)  Consequently, Plaintiffs have failed to meet the first element of "conduct" for a civil RICO.

**(b)**     **Enterprise**.     A RICO complaint must identify the "enterprise."  *Otto v. Veritable Annuity Life Insurance Company*, 814 F. 2d 1127, 1136 (7th Cir. 1986).  The hallmark of an "enterprise" is a "structure."  *United*

*States v. Korando*, 29 F. 3d 1114, 1117 (7th Cir.).  There must be "a structure and goal separate from the predicate acts themselves."  *Id.*  See also the United States Supreme Court's decision in *Reeves v. Ernst & Young,* 113 S.Ct. 1163 (1993).

It appears that the Plaintiffs alleged "enterprise" consists of Plaintiffs' general manager, Yates and office employees, Boyd and Monroe.  Plaintiffs' further allege that Yates, Boyd and Monroe were also in league with individuals at ROK Auto Brokers ("ROK") because ROK was buying the cars back from Yates, Boyd and Monroe for one-half (1/2) price.  (See paragraph 32 of Plaintiffs' First Amended Complaint)  These are the only individuals that Plaintiffs' Complaint can reasonably allege that profited from the fraudulent scheme they concocted. Plaintiffs' Complaint again makes no allegation that the Bank took part in directing or participating with Yates, Boyd, Monroe or individuals at ROK in the alleged enterprise's activities.

As noted by the court in *International Outdoor*, the mere failure to "detect or stop the scheme" carried out by the responsible party is not enough.  *Id.*  This is exactly what Plaintiffs have alleged.  Therefore, Plaintiffs' conclusionary allegations are insufficient to establish the "enterprise" element of a RICO claim because there are no allegations that the Bank took part in directing the affairs or management of the "enterprise."

        **(c)**    **Pattern.**      Plaintiffs must allege at least two acts of racketeering activity in order to establish a "pattern."  18 U.S.C. Section 1961(5).

The court in *Sedima* noted:  "While two acts are necessary, they may not be

sufficient. Instead, in common parlance, two of anything do not generally form a pattern. The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern." *Sedima,* 473 US at 496.

Quoting from the United States Senate Report, the *Sedima* court stated: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and a threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." *Sedima* quoting S.Rep. N.o. 91-617, P158 (1969)

Like this case, a scheme that might "…achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is achieved." *Torwest DBC, Inc., v. Dick*, 810 F. 2d 925, 929 (10th Cir. 1987). Therefore, even assuming, arguendo, that an enterprise existed between the Plaintiffs' former employees and the Bank, it cannot satisfy the element of a "pattern" because the multiple illegal activities of the Plaintiffs' former employees were all toward the singular purpose of promoting their "enterprise" by double-booking the vehicles on Plaintiffs' two separate Floor Plans.

Further, Plaintiffs' allegations are similar to those made in *Miller v. Moffat County State Bank,* 678 F. Supp. 247 (US Dist. Colorado, 1988) where the allegation was that the defendant bank charged an excessive interest rate throughout several loans to the same customer. The court in *Miller* found that those multiple

7

acts of alleged illegal activity constituted a "single unified transaction."  *Miller* at
249.  Thus, Plaintiffs cannot argue that because numerous cars were double-
booked by the Plaintiffs' employees' fraudulent scheme that the Bank or
Plaintiffs' employees were engaged in a "pattern" of racketeering activity.

Finally, as required by the foregoing authorities, the Plaintiffs must allege
a threat of "continuing criminal activity."  *Torwest* at 928 and 929.  See *Stewart
Title Guaranty Company, v. Calle Del Oro, LLC*, 218 W.L. 3222610 (US Dist. SD
California, 2018) citing *Schreiver Distributing Company v. Serv-Well Furniture Co.*,
806 F. 2d 1393, 1399 (9th Cir. 1986) for the proposition that a plaintiff must plead
and establish the "threat of continuing activity" to sustain a cause of action under
RICO.  See also *H.J., Inc., v. Northwest Bell Telephone Company*, 492 US 229, 237
(1989).  No such allegation appears anywhere in Plaintiffs' Complaint.

(d)     <u>Racketeering Activity ( "Predicate Acts").</u>   Plaintiffs
have alleged two predicate acts.  (See paragraph 53 of Plaintiffs' First Amended
Complaint.)  The first is a violation of 18 USC 2314 (transportation of stolen
property) and the second is 18 USC 1343 (wire fraud).

The pleading requirement for wire fraud is set forth in *Heinrich v. Waiting
Angels Adoption Services, Inc.*, 668 F. 3d 393 (6th Cir. 2012).  There are only two
elements:  "(1) a scheme to fraud and; (2) use of the wires in furtherance of the
scheme."  *Heinrich* at 404.

Plaintiffs' reliance on the transportation of stolen goods (18 USC 2312) is
dubious at best.  It is unclear from Plaintiffs' Complaint what specific goods were

allegedly stolen by the Bank.  No allegation exists in Plaintiffs' Complaint that accuses the Bank of directly stealing any goods from the Plaintiffs.  Most importantly for this motion is neither of the two (2) RICO claims allege that the Bank made an affirmative misrepresentation to the Plaintiffs.  Instead, Plaintiffs' RICO claims allege the Bank defrauded the Plaintiffs by failing to disclose certain facts.

There is an enlightening discussion about the efficacy of a civil RICO claim being predicated on a failure to disclose in *Emery v. American General Finance*, 71 F. 3d 1343 (7th Cir. 1995).  The exchange between Justice Posner's majority opinion and Justice Coffey's dissent is instructive.  But Justice Posner and Justice Coffey do agree that the general rule is that "mere failure to disclose" is not, without more, mail fraud or, in this case, wire fraud.  In order to sustain a claim that mail fraud or [wire fraud] would depend, according to Justice Posner, on the context.  *Emery* at 1347.  Justice Posner held that something "more" was required, such as a breach of fiduciary duty between the defendant and the plaintiff.  *Emery* at 1347.  Justice Coffey likewise observes that "mere failure to disclose, absent something more" does not constitute fraud.  *Emery* at 1350

The decision in *Emery* is consistent with the decisions of the appellate courts of Illinois that have specifically found that a fiduciary duty does not exist between a creditor and debtor or mortgagor or mortgagee.  *Pomier v. Peoples Bank of Mary Crest*, 967 F.2d 1115 (7th Cir. 1992); *Pakas v. Illini Federal Savings & Loan Association*, 109 Ill.App.3d 24 (1st Dist. 1982); *Northern Trust Company v. Halas*, 257

Ill.App.3d 565 (1st Dist. 1993); *Santa Clause Industries, Inc., v. First National Bank of Chicago*, 216 Ill.App.3d 231 (1st Dist. 1991); and *BA Mortgage and International Realty Corporation v. American National Bank & Trust Company of Chicago*, 706 F.Supp. 1364 (N.D. IL 1989).  The only exception, which is obviously not applicable here, is when the bank clearly acts in a fiduciary capacity, like the management of a plaintiff/customer's escrow account.  See *Choi v. Chase Manhattan Mortgage*, 63 F.Supp.2d 874, 885 N.D. Il. (1999) and *McDonald v. Washington Mutual Bank,* 2000 WL 967994 (N.D.Il., 2000).

The existence of a fiduciary duty is a determination that may be made by this Court as a matter of law.  *Santa Clause* at 330.  Here, the Plaintiffs have not plead the existence of a fiduciary duty.  Rather, Plaintiffs' First Amended Complaint abandoned their claim of constructive fraud/fiduciary duty set forth in Count III of Plaintiffs' original Complaint.  Consequently, the non-existence of a fiduciary duty between the Plaintiffs and the Bank is fatal to the fourth element of Plaintiffs' RICO claim in Count I as well as the fraud claims set forth in Counts II and IV of Plaintiffs' First Amended Complaint.

### (2)    Count II – Fraudulent Inducement and Count IV - Fraud.

These two Counts are first cousins.  Both are tethered to the transaction between the Plaintiffs and Bank regarding the Business Loan Agreements.  Both depend upon allegations of fraud that are predicated upon a failure to disclose material facts.  As stated above, Plaintiffs must plead and prove the existence of a fiduciary relationship which would raise a duty to speak. *Magna Bank v. Jamson*,

237 Ill.App.3d 614, 618 (1992).   Therefore, the non-existence of a fiduciary relationship between the Plaintiffs and the Bank is again fatal to Plaintiffs fraud claims for allegedly failing to disclose material information.

To the extent Plaintiffs' Complaint could be construed as alleging fraudulent misrepresentations made outside of the terms of the credit agreement, any such claim would be defeated by the Illinois Credit Act, 815 ILCS 160, *et seq.*, ("Credit Act").  Basically, the Credit Act requires any credit relationship/agreement to be in writing and prohibits any claim for alleged extra-contractual statements or activities.  See *V.R. Holdings, Inc., v. LaSalle Business Credit,* 2002 W.L. 356515 (N.D. IL. 2002).  The Credit Act is to be construed broadly to prohibit all claims arising from alleged extra-contractual representations or omissions of conduct to any credit relationship.  *McAloon v. Northwest Banc Corp., Inc.,* 274 Ill.App.3d 758, 762 (2ⁿᵈ Dist. 1995).

### (3)    Count III – Breach of Contract.

Plaintiffs' breach of contract claim is less than clear.  It would appear that paragraphs 72-75 of Count III are attempting to allege three (3) breaches of the Business Loan Agreement between the Plaintiffs and the Defendant.  Copies of the Business Loan Agreements between Plaintiffs and Defendant signed by the Plaintiffs are attached to the Bank's Motion to Dismiss as Exhibits A and B.[1]  For the reasons that follow, two (2) of the claimed breaches of contract are defective

---

[1] The Business Loan Agreements were referenced in the Plaintiffs' Complaint and, as set forth in the Motion, constitute an indisputably authentic attachment that may be considered by the Court pursuant to *Sierra Club v. Franklin County Power of Illinois,* 2005 WL 3440728 (S.D.IL. 2005).

and must be dismissed because the Business Loan Agreement does not impose any affirmative duty on the Bank as alleged by Plaintiffs.  The remaining breach of contract claim that pertains to the authority of Plaintiffs' employees to draw on the line of credit does contain sufficient facts that, if true, which Bank obviously denies, would be sufficient to survive a motion to dismiss.

(a)     **<u>Plaintiff's Affirmative Covenants are not Applicable to the Bank.</u>**

Two (2) of the alleged breaches of contract against the Bank are based on the language contained in a subparagraph titled "Additional Requirements" that is under the general "Affirmative Covenants" that is contained on page two (2) of the Business Loan Agreement.  That language provides:

"**AFFIRMATIVE CONVENANTS.**  Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

> **Additional Requirements.**  SUBMISSION OF SIGNED "TRUST RECEIPTS" ALONG WITH PROOF OF VALUE (i.e., INVOICE OR NADA AUCTION VALUE) TO SUPPORT ADVANCES SECURED BY USED VEHICLES; VEHICLES SOLD FOR CASH MUST BE PAID WITHIN 5 BUSINESS DAYS AND VEHICLES SOLD UNDER FINANCING ARRANGEMENTS MUST BE PAID WITHIN 10 BUSINESS DAYS.  THE BANK WILL MONITOR IF SALE ARE OUT OF TRUST THROUGH MONTHLY FLOOR PLAN AUDITS.  IF THE BANK DETERMINES THE BORROWER IS OUT OF TRUST, ADDITIONAL FEES MAY BE IMPOSED."

Plaintiffs' attempt to use the above language as quoted in paragraph 72 of Plaintiffs' Complaint to impose an affirmative obligation upon the Bank regarding the "proof of value" or that the Bank must "monitor" the Floor Plan

Agreement for the Plaintiffs benefit demonstrates that Plaintiffs have misread the clear and unambiguous language of that provision.

As the language of the Business Loan Agreement plainly states, all of the "**AFFIRMATIVE COVENANTS**", including the subparagraph regarding "**Additional Requirements**" set forth above, are imposed solely upon the Plaintiffs as the Borrower.  No such affirmative obligations are imposed upon the Bank.

This Court may construe an unambiguous contract as a matter of law.  See *Bourke v. Dunn Bradstreet Corp.,* 159 Fed. 3d. 1037 (7th Circuit 1998).  Clearly then, Plaintiffs cannot rest their claims for breach of contract on the affirmative obligations imposed solely upon the Plaintiffs.  Therefore, these two (2) claims for breach of contract should be dismissed with prejudice.

(b) <u>Plaintiffs' Remaining Breach of Contract Claim.</u>

Plaintiff has one (1) remaining breach of contract claim.  Plaintiffs allege in paragraph 75 of their Complaint that no one other than Ronald Ward or Mark Ward were authorized to request advances on the line of credit.  While the Business Loan Agreement referenced above contains no such language there is a collateral document (promissory note) that contains language similar to that alleged by the Plaintiffs that would, if true, state a cause of action for breach of contract.  Thus, at this point, the Bank concedes this remaining breach of contract claim survives this motion.

**(4)** __Count V- Alternative Count for Unjust Enrichment__.  Unjust enrichment is an equitable remedy and only available when there is no adequate remedy of law.  *Nesby v. Country Mutual Insurance Co.,* 346 Ill.App.3d 564 (2004).  "Where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application."  *Nesby* at 567.  Here, the Plaintiffs have alleged a breach of contract claim in Count III of their Complaint.  Accordingly, Plaintiffs cannot sustain an unjust enrichment claim even as an alternative cause of action.

## CONCLUSION

For the reasons set forth herein, Bank seeks dismissal of all or a portion of all of the Counts of the Plaintiffs' Complaint with prejudice.  The only exception is one of the three (3) claims for breach of contract set forth in Count III of Plaintiffs' Complaint.

In the alternative, if this Court dismisses the RICO count, which forms the basis for federal jurisdiction in this matter, the Court has the option of refusing to exercise its supplemental jurisdiction on the remaining four (4) Counts.  See *Baggett v. First National Bank of Gainsville,* 117 F.3d 1347 (11th Cir. 1997).  This would seem to be an appropriate case that can be referred back to Williamson County where all the transactions took place and where all parties and witnesses are located.

Respectfully submitted,


/s/ Mark S. Johnson_____
MARK S. JOHNSON


MARK S. JOHNSON
JOHNSON, SCHNEIDER & FERRELL, L.L.C.
212 North Main Street
Cape Girardeau, MO 63701
Telephone: 573-335-3300
Facsimile: 573-335-1978
mark@johnsonschneider.com


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 5th day of March, 2021, a copy of the above and foregoing pleading was filed electronically with the Clerk of the Court, using CM/ECF System, which sent notification of such filing to:

Jon Loevy
Loevy & Loevy
311 N. Aberdeen, Third Floor
Chicago, IL 60607

Daniel M. Twetten
Loevy & Loevy
2060 Broadway, Suite 460
Boulder, CO 80302

_/s/Mark S. Johnson_____